BETTS, *et ux. vs.* THE UNION BANK OF MARYLAND.—June, 1827.

Marriage cannot be given in evidence as the consideration of a deed of bargain and sale expressed to be made for a money consideration only.

The greatest extent to which the authorities have gone, has been to allow an *additional* consideration to be proved, which is *not repugnant* to the one mentioned in the deed: but where a deed is impeached for fraud, *the party to whom the fraud is imputed,* will not be permitted to prove any other consideration in support of the instrument.

Ante-nuptial settlements, made in consideration of marriage, are good, even though the party be then indebted.

As a general principle of the law, delivery is essential to the legal existence and validity of a deed; but our legislative enactment declares a deed, recorded within the time prescribed by law, to be efficient and operative from the time of its date.

APPEAL from the Court of Chancery. The complainants in that court, (now appellees,) filed their bill on the 25th of September 1820, against the appellants, and *Edward Priestly*, in which it is stated that on the 24th of March 1819, *Betts*, (one of the defendants and appellants,) being indebted to the complainants in the sum of $1700, upon two promissory notes, one for $700, dated the 22d of February, and the other for $1000, dated the 25th of February then last passed, payable 60 days after their respective dates, both of which notes were drawn by *Priestly*, one other of the defendants, in favour of *Betts*, and by him endorsed, and discounted by the complainant for the sole use and accommodation of *Betts*, at their banking-house, in consideration that the complainants had agreed to extend the accommodation of the said notes for the term of three years from the 24th of March 1819; and to accept of a security on the property of *Betts* in lieu of *Priestly's* name and responsibility; and for the purpose of more effectually securing the payment of the said sum of money, and interest thereon, *Betts* made and executed a deed of mortgage or trust, dated

the 24th of March 1819, and thereby conveyed to the complainants, and their assigns, all that lot of ground in the city of *Baltimore*, No. 111, being part of a tract of land called *Todd's Range*, &c. with a proviso that the said conveyance should be void in case *Betts*, his heirs, &c. should, before the expiration of the term of three years from the date thereof, pay to the complainants the said sum of money, &c. But if default should be made by *Betts*, then the conveyance was declared to have been made in trust; and the complainants might after notice, sell the said lot of ground, &c. to satisfy and pay the said debt of $1700, or so much as should remain due, and should in the meantime renew the said notes at the end of every 60 days, and pay the regular interest or discount upon the same, &c. The bill further states, that a short time previous to the execution of the said mortgage to the complainants, *Betts* called on *Beale Spurrier*, a conveyancer, and requested him to draw a deed of a lot of ground which belonged to him, *Betts*, and on which his dwelling-house stood, (being the same lot of ground herein before referred to,) and to leave blanks for the name of the grantee, and the amount of consideration. That on the 17th of March 1819, *Betts* called again on *Spurrier*, and requested the blanks to be filled up, and the name of *Elizabeth Ball* inserted as grantee, which having been done, he executed the conveyance, and requested *Spurrier* to let the transaction remain private, stating that he was about to be married to the said *Ball*; that she was young, and he had thought proper to make this provision for her without her knowledge. That some days afterwards *Spurrier* was requested by *Priestly* and *Betts*, (but at different times,) to prepare some securities on the property of *Betts*, to the complainants, for a debt due to them; but upon discovering that a part of the property offered to be mortgaged was the same that had been a few days before conveyed to *E. Ball*, *Spurrier* observed to *Betts* that before he could consent to be privy to the execution of the mortgage, he must be satisfied that the previous conveyance to *E. Ball* had been cancelled, or else he must communicate its existence to the parties interested. *Betts* replied that it should be cancelled, that he had it in his possession, and that *E. Ball* had no knowledge of it. He then brought the deed to *Spur-*

*rier* and left it with him. That *Spurrier*, in pursuance of directions given to him by *Priestly* and *Betts*, prepared two several deeds of mortgage or trust—one on a parcel of ground belonging to *Betts*, on the south side of *Queen-street*, for the sum of $4000; and a second on the lot herein before mentioned, on the N. side of said street, being the same conveyed to *E. Ball* for $1700. *Betts* then requested *Spurrier* to prepare a deed from him to *E. Ball* for his reversionary interest or equity of redemption in the lot to be mortgaged for $1700. Which deeds having been prepared, were executed by *Betts* on the 24th of March 1819. It was then mentioned by *Spurrier*, that the first deed to Miss *Ball* should be destroyed. *Betts* repeated that she had no knowledge of it; that he wished to retain possession of it, in order that he might have it recorded in preference to the second one, in the event of his being able in the course of six months (upon which he confidently calculated,) to discharge the bank's lien, as in that case he wished his intended wife to have the benefit of the first conveyance; and pledged his honour that it should not be used unless his expectations to pay should be realized; and that he would request the bank to withhold the mortgage from record until six months should be nearly expired. In consequence of which said declarations and pledges made by *Betts*, *Spurrier* permitted him to take and retain the first deed to Miss *Ball*, and so far confided in his veracity and honour as to keep the complainants in ignorance of its existence, and of the circumstances herein related. The bill then charges, that *Betts* not regarding his said several promises and undertakings to *Spurrier*, but fraudulently intending to injure and deceive the complainants, lodged in the office of record the first deed to Miss *Ball*, with whom, either immediately before or shortly afterwards he intermarried. That the said notes have both become due and remain unpaid, *Betts* having totally neglected and refused to pay or to renew the same, and pay the regular and usual interest, &c. although often demanded by the complainants, still refuses to renew the said notes, and pay the said discount, &c. as is provided by the deed of mortgage. *Prayer*, that the deed to Miss *Ball*, (now Mrs. *Betts*,) may be utterly rescinded, annulled and set aside; and that the mortgaged premises may be sold for the payment

of the sum of money in the said mortgage deed mentioned, &c. and for further relief, &c.

The *answers* of *Betts*, and *Elizabeth* his wife, admit the debt due to the complainants, and the deed of mortgage to them as stated in the bill, but they insist that the term of credit given and allowed by the said deed had not expired, and that the complainants were not entitled to ask for a foreclosure of the same.  The answer admits that *Spurrier* was requested by *Betts*, a short time before the deed of mortgage to the complainants, to prepare a deed for the purpose of conveying the lot of ground which is mentioned in the said mortgage deed, and to leave the name of the grantee, and the consideration in blank, and that afterwards *Betts* called on *Spurrier*, and desired him to insert the name of *E.* Ball, now the defendant *E.* Betts, as the grantee in the said deed.  But Betts utterly denies that he requested *Spurrier* to keep the said transaction a secret, or told him that as *E.* Ball was young he had thought proper to make such a provision for her without her knowledge, or that any conversation of that nature ever occurred between Betts and *Spurrier*.  The defendants aver, that the said deed, executed and delivered by *Betts* to *E.* Ball, (his now wife,) was executed and delivered to her with her full knowledge, approbation and consent, and in consequence of an agreement previously entered into by her and *Betts* upon the eve of their marriage, for a marriage settlement for her, which agreement was made in February or the beginning of March 1819, and in consequence of which agreement the said deed to *E. Ball* was executed by *Betts*.  He denies that *Spurrier* told him it would be necessary he *Spurrier*, should be satisfied that the previous deed made to *E. Ball* had been cancelled, or else he would communicate the same to the parties; and he also denies that he promised the said deed should be cancelled, or that he had the deed in his possession, and that *E. Ball* had no knowledge of it, or that any conversation of such a nature occurred.  The defendants aver that the said deed was executed and delivered anterior to the execution of the deed for the same property to the complainants.  They deny that *Betts* left the said deed with *Spurrier* with the knowledge or consent of *E. Ball.*  They admit that *Betts* executed the two mortgages

referred to in the bill, to the complainants. *Betts* denies that he ever pledged his honour, or promised *Spurrier* not to make use of the deed to *E. Ball;* and *Elizabeth* avers, that she does not believe he did, &c. and if he did, it cannot bind her, or affect her rights, where the same was done without her knowledge or consent. They aver that *Elizabeth* refused to marry *Betts* until the said deed from him to her was regularly executed.

The answer of *Priestly* admitted, and confessed all the matters and facts stated in the bill of complaint to be true as there stated, and that he believed the conveyance to *E. Betts,* the wife of *Betts* and co-defendant in this cause, was made for the fraudulent purposes alleged in the said bill.

*Exhibit*—By the complainants—a deed of mortgage from *E. Betts* to complainants, dated the 24th of March 1819, for the lot of ground, to secure the payment of the money in the manner mentioned in the bill of complaint, which mortgage was recorded on the 27th of April 1819. The *exhibit* by the defendants—a deed from *Enoch Betts* to *Elizabeth Ball,* dated the 17th of March 1819, whereby the former "for and in consideration of the sum of four thousand dollars lawful money of the *United States,* to the said *Enoch Betts* in hand well and truly paid by the said *Elizabeth Ball,* at and before the sealing and delivery of these presents, the receipt whereof the said *Enoch Betts* doth hereby acknowledge," &c. the said *Betts* granted and conveyed to the said *E. Ball* a lot of ground in the city of *Baltimore,* No. 111, &c. This deed was recorded on the 9th of August 1819.

A commission issued, and testimony was taken thereunder. That of *Beale Spurrier* was very similar to that stated in the bill, with other additional evidence of what took place between him and *Betts* at a subsequent period, on having called on *Betts* at the instance of *Priestly.* The testimony of *Walter Ball* is, that *Elizabeth Betts* is his sister. That previous to her marriage, he called on *Betts* to know whether he had conveyed to the deponent's sister a sufficiency of property to make her independent of his children, as he had promised to do. He told the deponent he had got the deed, and gave it to the deponent, and said here is what I have given your sister, and

requested the deponent to take it and read it, and said at the same time, he thought it was sufficient to make her comfortable. After deponent had read the deed he replied, he thought it was. The deed was at that time executed and acknowledged by Betts. He informed his sister of the contents of the deed before her marriage, which appeared to be satisfactory to her. Betts was an elderly man, with a family of four children. *E.* Ball was a young woman. It was at the request of *E.* Ball, the deponent went to examine the deed given to her by Betts. The testimony of *William* Ball is, that *Elizabeth Betts* is his daughter; that *E.* Betts addressed her, and he consented to the marriage, provided Betts would make her independent of Bett's children; and that a few days before the marriage he met Betts, and had a conversation with him, and Betts mentioned to the deponent that he was clear with Mr. *Priestly,* and that he was then prepared to place the deponent's daughter in the situation which he had promised. Betts had given deponent to understand that he was an independent man, though not a rich one, and that he was in a situation to make the deponent's daughter independent of his children. *Sarah* Ball deposed, that *Elizabeth Betts* is her daughter. That *Enoch* Betts did make the deed to her daughter; that the deed was shown to, and read by, the deponent, it having been executed and acknowledged by Betts; this was previous to the marriage. That at the time of showing the deed, Betts observed, that it would be sufficient to keep her daughter from want, to which the deponent replied yes. · That it was with the approbation of her daughter that the deed was examined and read by the deponent. The deponent was determined in her mind that Betts should not have her daughter without he gave her a sufficiency to keep her from want in case of his death. When he asked the deponent for her daughter, she observed to him that he was a great deal older than her daughter was; that he might die first, and leave her with a rising generation; and then asked him what was to become of her and her children—to be depending on his children for her support? The deponent intimated to him that he ought to give her something independent of his children. He then replied he would. She then left him, and told her daughter that Mr. Betts intended to make her in-

dependent of his children if she was willing to have him. Six or seven days before the marriage, the deponent went and asked him whether he had done that business? He said he had; with that he got the deed and showed it to her, and she read it, and then he said he thought it was sufficient. The deponent replied yes. She went home and informed her daughter of it. That the marriage took place on the 25th of March 1819. Other similar testimony was taken and returned under the commission, but which is unnecessary to be stated.

JOHNSON, Chancellor, (July term 1822.) The object of the bill is to vacate a deed, on the ground of fraud, executed by *Enoch Betts* to *Elizabeth Ball*, with whom he afterwards intermarried, and to obtain a decree for the sale of the property under a mortgage obtained from *Betts* to the *Union Bank*, to secure the payment of a sum of money due from him to the bank, and for which *Edward Priestly*, the other defendant, was responsible to the bank.

On the 24th of March 1819, the mortgage was executed to secure the payment of the sum of $1700. The debt arose on two notes amounting to that sum, which had been discounted at the bank; and three years were to be allowed for the payment of the principal debt, provided *Betts* regularly renewed the notes during that period, and paid the discounts. The bill, (which was filed on the 25th of September 1820, before the three years had elapsed,) alleges that *Betts* had not renewed the notes when due. The mortgage was recorded on the 27th of April following the date.

The bill states, that a short time previous to the execution of the mortgage, *Betts* called on a conveyancer, and requested him to draw a deed, (for the same property included in the mortgage,) and leave the name of the grantee, and the consideration, blank. On the 17th of March 1819, he, *Betts*, waited on the conveyancer, and requested the blank to be filled up with the name of *Elizabeth Ball*, as the grantee, which was done, and the deed on that day executed.

The same conveyancer was afterwards, at different times, requested by *Priestly* and *Betts* to prepare some securities on the property of *Betts* to secure the debt to the *Union Bank*,

that on discovering that part of the property, designed to be mortgaged, was the same comprehended in the deed to *Elizabeth Ball,* the conveyancer, *(Beale Spurrier,)* informed *Betts* that the first deed, (the execution whereof *Spurrier* had by *Betts* been requested to keep secret,) must be cancelled, or he *(Spurrier,)* must inform those interested with the circumstances. *Betts,* who then had the deed in his possession, said it should be cancelled, declaring that *E. Ball* had no knowledge of it; and the deed was left with *Spurrier.* The mortgages were prepared, and a deed written at the instance of *Betts,* to convey his equity of redemption in the same property before conveyed to *E. Ball,* as a substitution for the first deed, observing, he thought it would be in his power to redeem the mortgages. The mortgages and the last deed were then executed. *Betts* was again informed by *Spurrier* that the deed of the 17th of March (the first deed to *E Ball,)* must be destroyed, when *Betts* replied he wished to keep it, as he expected to pay the debt in the course of six months; that he would request the bank not to have the mortgages recorded until the time for recording had nearly expired; and that he preferred recording the first to the second deed to *E. Ball,* and pledged his honour to *Spurrier* not to use the first deed except the mortgage was discharged; on which *Spurrier* permitted him to take and retain the first deed. Not regarding his promises, but as the bill charges, fraudulently intending to injure and deceive, the first deed was lodged for record immediately before or shortly after *Betts* married *Elizabeth Ball.*

The answer of *Betts* admits the request to have the deed prepared with the blanks, and when drawn, at his request, the name of *Elizabeth Ball* was inserted as the grantee; but he denies all the allegations in respect to keeping the transaction a secret, or that he had thought proper to make a provision for *E. Ball,* whom he was about to marry, or that any conversation passed between him and *Spurrier* of the nature that is set forth in the bill. And his wife, by her answer, believes what her husband states is true. Both of them aver that the deed was executed in consequence of an agreement previously entered into between them on the eve of marriage, for a marriage settlement; that the agreement was made in the month of Februa-

ry, or the beginning of March 1819. *Enoch Betts* denies every thing that is alleged about the promise to cancel; and denies that the deed, with the knowledge of *Elizabeth*, was left with *Spurrier;* and avers that the deed of the 17th of March was executed and delivered anterior to the mortgage.

The only consideration of the deed of the 17th of March, is the payment of the sum of $4000, the receipt of which is acknowledged. This deed was recorded on the 9th of August following its date.

This cause has been argued partly in writing and in part verbally, and every attention has been given to the grounds occupied by each in maintenance of the side each espoused; and all the evidence and circumstances of the case, as well as all the authorities relied on, maturely considered. Several questions arise in the cause.

*First.* Was the deed to *Elizabeth Ball,* in point of fact, first duly executed?

*Second.* If first executed, is it available against the complainants? and as the consideration contained in the deed was not paid, can any other be set up in its support?

*Third.* Supposing it competent to give, in support of the deed, evidence of a consideration other than the one contained therein, is there evidence of such a consideration for its execution as can prevail against the complainants?

1. On the first question. It will be perceived, on an attentive examination of the bill, and the answer of *Enoch Betts,* that the allegations, that at the time the mortgage was executed, the first deed was in the possession of *Spurrier,* is not denied by the answer. The answer denies that he, *"Enoch,* left the said deed with the said *Spurrier* with the knowledge or consent of the said *Elizabeth."* All of which is consistent with the bill; for so far from alleging that *E. Ball* ever consented to the deed being carried to and left with *Spurrier,* she is declared to be ignorant of its existence. What is contained in the bill on this subject is not denied; but the denial applies to what is not charged, and is therefore foreign from the matter in contest.

The evidence of *Spurrier* is explicit on this subject. He swears that *Betts* brought to and left with him, the deed, which

after the three other deeds were executed, on the solemn pro-
mise of *Betts* not to use it but on the event of the discharge
of the mortgage, he *(Spurrier)* permitted *Betts* to retain the
possession of the deed.    That is, he returned the deed to him,
and permitted him to keep it, only to be used on the event
taking place that had been mentioned.

If the evidence of *Spurrier* is true, of which I entertain not
the most slight doubt, then in point of fact, the deed of the 17th
of March (if it may be denominated a deed) was not delivered
to *E. Ball*, or to any other person for her use, when the mort-
gage of the 24th of March was executed.    The delivery, and not
the date, is the essential part.    The instrument of writing may
be a deed without date, but no deed can exist without delivery;
until then the act is as incomplete as a paper purporting to be
a last will and testament before the death of the maker.

But it has correctly been remarked by the counsel for Mrs.
*Betts*, that no act of her husband can invalidate her deed; that
once executed, it is free from his control.    This position, true
in itself, before it can be brought to bear on the cause, requires
that the instrument in question must first be established to be
a deed.    Surely, if from the time it was executed, to the 24th
of March, it had been in the exclusive possession of *Betts*, and
was then delivered up, in order to give effect to other deeds
then executed, it never could be brought, by relation to its date,
to control and defeat them.    Is there any evidence of the de-
livery either to *E. Ball*, or to any other person for her?

Her mother, *S. Ball*, proves that "the deed was shown to
and read by her."    By whom was it shown? Not by *E. Ball*,
or any person to whom it was delivered, but by *Betts* himself,
then in possession of it, as manifestly appears by the whole of
her evidence taken together.

*Walter Ball*, her brother, proves that previous to the mar-
riage he called on *Betts*, who said he had "got the deed, and
gave it to the deponent, and said here is what I have given your
sister, and requested deponent to take it and read it, and said
at the same time, he thought it was sufficient to make her com-
fortable.    After deponent had read the deed, he replied, he
thought it was."    The deed, as is evident from the whole of
his evidence, was then returned to *Betts*; for in his answer to

the fourth interrogatory on the part of the defendants, he says "he informed his sister, *Elizabeth Ball*, of the contents of the deed before her marriage." She would not have been informed of the contents of the deed, if her brother then held it; she would either have read it herself, or had it read to her.

These are the only witnesses in the cause on whom any reliance can be placed to establish a delivery of the deed of the 17th of March, to have been made prior to the mortgage. All the witnesses, it is true, in speaking of the instrument of writing of the 17th of March, call it a deed, as is also done in this decree; but if it was not accompanied with all the solemnities necessary to constitute it such, the appellation of deed will not make it one.

It may fairly be inferred, it never was the intention of *Betts* to give it the binding efficacy of a deed, before the solemnization of marriage; for as the consideration was money, and as he denies all that is stated by *Spurrier* in respect to the marriage, had he parted with the paper, the title to his property, certainly as between him and *E. Ball*, would have been transferred to her, and would have vested in her, although she afterwards refused to marry him; and whether it ever could have been recovered back is problematical.

To constitute a deed, delivery of some kind must be proved. To a third person for the grantee is sufficient; but the casual placing it in the hands of a third person, with the view to let him read it, and then return it, will no more amount to a delivery, than if the grantor had retained in his own hands the paper, and there permitted it to be read. No case has been produced, nor have I been able to find one, by which, on the evidence as here disclosed, the paper of the 17th of March can be established a deed to overreach the mortgage of the 24th of the same month to the complainants.

The execution of the deed, it has been contended, is not called in question by the bill, and therefore need not be proved. The bill, it is true, calls the instrument a deed; but it shows that when the mortgage was executed, it was not in the possession of the grantee, directly or indirectly; and if a delivery is necessary for its validity as a deed, and there was none, its execution cannot correctly be said to be admitted. But if the

opinion given on the first question is not tenable, the second arises.

2. Can evidence of a consideration, other than that contained in the deed be received to support it? This entirely depends on law, and might properly be referred to a court of law, but having expressed an opinion on the first point, which, if correct, ends the cause, I shall, without the assistance of a court of law, determine the other point.

It is well established as a general rule, "that parol evidence cannot be admitted to contradict, add to or vary, the terms of a will, deed, or other instrument of writing." For, to use the language of Lord *Coke*, "it would be inconvenient that matters in writing, made by advice and on consideration, and which finally import the certain truth of the agreement of the parties, should be controlled by an averment of parties to be proved by the uncertain testimony of slippery memory; and it would be dangerous to purchasers, and all others, in such cases, if *nude* averments against matter in writing should be admitted." *Countess of Rutland's* case, 5 *Coke*, 26.

But although the rule, as a general one, is not controverted, and its applicability to prevent different *uses* and *trusts* from being raised, than are contained in the instrument, or to vary the condition of a bond; yet a difference in respect to the admission of parol evidence is alleged in regard to the *consideration* of the instrument itself. Parol evidence cannot vary the uses, &c. but parol evidence may be received to establish a deed by the proof of *another* consideration, consistent with the nature of the consideration contained in the deed or instrument. And, as is argued on behalf of the deed, marriage, as well as money, is in contemplation of law, and in reality a valuable consideration. Therefore, if it appears that the deed was executed in consequence of a previous marriage agreement, it must be supported.

It will be found, on an examination of the authorities, that in some instances you may give evidence of a consideration in addition to that stated in the deed, if the additional consideration is of the same nature. But such evidence is not admissible in every instance. Nor has any case presented itself in my researches, which, on this occasion, have not been slight-

where a deed has ever been supported by the proof of a *con-sideration consistent* with the nature of that in the deed, except where the *consideration in the deed*, as well as the one proved in addition, was also true.

With what propriety, it may be asked, can it be said, when the deed purports to convey property in consideration of $4000 paid, that you can be permitted to prove that a marriage contract, and not the money, was the inducement or consideration for the conveyance, and at the same time contend that such proof is consistent with the deed? They are as variant as north from south. If the $4000 had been paid for property worth $20,000, the inadequacy of price might of itself induce the belief that the deed was improperly obtained. But to support the deed, the real consideration, as set forth in the deed being true, parol proof of an additional consideration consistent with its nature—such as marriage, might be let in. For as the $4000 were in part the real consideration, the superadding another consistent consideration, the books say, is no variance. But it is believed no book has gone so far as to establish a deed *by another consideration alone*, than the one expressed in the deed. "Where a deed is impeached for fraud, the party charged will not be allowed to prove any other consideration in support of the instrument." 1 *Phillip's Evid.* 426. *Clarkson vs. Hanway*, 2 *P. Wms.* 203. But "the party which complains of the fraud may prove any consideration, however contrary to the averment of the deed, to show the fraudulent nature of the transaction." For there is no danger, say the books, that the introduction of such proof would introduce uncertainty or fraud, "but, that fraud would be assisted by its exclusion, the whole object of the evidence being to expose and defeat a secret fraud." 1 *Phill. Evid.* 424 to 428, and the cases there referred to. 1 *Fonbl.* 202.

As, in this case, there is not the least foundation to suppose the $4000, the alleged consideration of the deed, ever were paid, the evidence going to establish another consideration is clearly inadmissible.

The decision of the court of appeals in *Jones vs. Slubey*, 5 *Harr. & Johns.* 372, bears strongly on this cause.

3. If the evidence of the consideration set up in support of

the deed was admissible, could such a consideration support the deed?

*Enoch Betts*, being largely indebted, wishes to marry. He is an old man, with a number of children; forms an attachment for a young lady, who it would seem would not marry him without obtaining something to make her independent of his children. This he promises to do; and this appears to me to be the *substance* of what is *now termed a marriage contract.* Now let us suppose this promise was made, which I do not question was the case, and she had been informed by *Betts* he had secured to her what would make her independent of his children, and relying on this information she married him, and then discovered no such establishment had been made, could a bill be supported in chancery? Where is that certainty which all contracts demand? What, it might be asked, was he to convey? What and how much would make her so independent? If a bill could not be supported, supposing no paper to have been signed, how could a claim be maintained on such a promise, supposing the paper to have been signed, so as to obtain it from him as a completion of these engagements? It seems to me a dangerous principle to permit a man, involved in debt, by making a promise to settle his property on the woman he intended to marry, to do so, to the ruin of his creditors. On these subjects I express no opinion, except I do not think the public good would be promoted by the encouragement of marriages on such conditions.

That the complainants may obtain the relief they appear justly entitled to—*Decreed*, that unless the defendants shall, on or before, &c. pay, or cause to be paid, to the complainants, the sum of $700, with legal interest on the same from the 25th of April 1819, and the further sum of $1000, with interest as aforesaid, from the 28th of April 1819, until paid, together with the costs of this suit, the property in the deed of mortgage filed in this cause be sold, or such part as will be sufficient to discharge the said sums. And in order to make the said sale, on failure to pay—*Decreed*, that R. J. be and he is hereby appointed trustee, &c. From this decree *Betts* and *Wife* appealed to this court.

The cause was argued at June term 1824, before BUCHANAN, Ch. J. and EARLE, MARTIN, STEPHEN, and ARCHER, J.

*J. Glenn*, for the Appellants, contended,

1. Under the circumstances of this case the appellees had no right to come into a court of equity to ask relief.

2. The deed to the appellant, *Elizabeth*, was duly executed for a valuable consideration previous to the deed to the appellees.

3. Parol evidence is admissible to support the deed.

The appellants have the superior legal title, and the superior equity. The act of 1766, *ch.* 14, *s.* 5, fixes the time when the deed enured to the benefit of Mrs. *Betts*. It took effect from its date, and gave the legal title to her before the mortgage to the appellees. The deed was delivered before the mortgage; and it was made in consideration of marriage. Any act amounting to a delivery is sufficient to constitute a delivery of a deed. The consideration was marriage, and that is a valuable consideration. 2 *Blk. Com.* 297. *Sugd.* 465, and the cases there cited. *Verplank vs. Sterry*, 12 *Johns. Rep.* 546. A subsequent marriage validates a voluntary deed as against creditors. There was a good delivery of the deed. *Shelton's* case, *Cro. Eliz.* 7. 13 *Vin. Ab.* (K.) 23, pl. 12. *Souverbye vs. Arden*, 1 *Johns. Ch. Rep.* 255. 2 *Rolle's Ab.* 24, l. 28, 45. 4 *Com. Dig.* tit. *Fait*, (A. 3,) 158. There must be fraud to defeat the prior deed. *Evans vs. Bicknell*, 6 *Ves.* 189, 191. *Berry vs. Mutual Insurance Company*, 2 *Johns. Ch. Rep.* 609. The consideration was $4000, as expressed in the deed, and it is in proof that the consideration was marriage, and not a money consideration. Where there is a valuable consideration expressed, another valuable consideration may be averred where there has been no fraud. *Villers vs. Beamont*, 2 *Dyer*, 146. *Mildmaye's* case, 1 *Coke*, 176. *Lord Cromwel's* case, 2 *Coke*, 76. *Vernon's* case, 4 *Coke*, 3. *Peacock vs. Monk*, 1 *Ves.* 128. *The King vs. Inhabitants of Scammonden*, 3 *T. R.* 474. *The King vs. Inhabitants of Laindon*, 8 *T. R.* 379. *Sugd.* 87. *Fancis's Max.* No. 2. 1 *Fonbl.* 138. The appellees had notice of the deed, and they must take subject to that deed. The conveyancer was the agent of the appellees.

*Le Neve vs. Le Neve,* 3 *Atk.* 646.    If there is a defect in the deed to Mrs. *Betts,* equity will make it good.    1 *Madd.* 41.

*R. Johnson,* for the Appellees.   1.   There was no notice to the agent.   The conveyancer was as much the agent of Mrs. *Betts* as of the appellees.   He knew that *Betts* was indebted to the appellees.   If Mrs. *Betts,* through the agent, knew that fact, was the deed to her an effectual conveyance under such circumstances?   It would have been a fraud on her in taking the deed. Was there a delivery of the deed?   It is the delivery that makes it the deed of the party.   2 *Blk. Com.* 307.   A deed takes effect from its delivery.   When was this deed delivered? There is no pretence that it was delivered to Mrs. *Betts,* or that she ever saw it.   It was to be the deed of *Betts* when the marriage took effect.   The deed was not left as in *Shelton's* case, *Cro. Eliz.* 7, but *Betts* put the deed in his pocket, and took it away with him after he had executed it.   There is no evidence to show that there was any delivery.   The grantor took the deed to the clerk's office to be recorded, and it was then, and not before, legally delivered.   The act of 1766, *ch.* 14, *s. .5,* in speaking of the date of the deed, means from the time of the delivery.   The day of the date is the day of the delivery, *Jackson vs. Bard,* 4 *Johns. Rep.* 230.

2.   Can parol evidence be received to prove a different consideration than that stated in the deed?   The chancellor in his decree has correctly laid down the rule.   The consideration of marriage, is not of the same nature as that in the deed.   If the parol evidence is to admit that the consideration was marriage, and not money, it would be to change the consideration wholly from that stated in the deed.   2 *Blk. Com.* 338.   What the deed is, and what it will be if the evidence is admitted—Where it is a money consideration, then it is a bargain and sale—If marriage, then the nature of the deed will be changed into a covenant to stand seized to uses.   Can such a doctrine as this be admitted?   A deed of bargain and sale has certain requisites peculiar to itself, which the evidence would have the effect to change and wholly defeat.   Independent of the Statute of Frauds, the evidence could not be admissible.   The cases cited by the appellants' counsel, are where there is a pecuniary con-

sideration, and other pecuniary consideration is proved; but none of them go to say you can change the consideration, and substitute another in its place, although they both be valuable considerations. 1 *Phill. Evid.* 426, (483.) *Betts* executed the deed with a fraudulent design, and the consideration stated in the deed was not paid. If the evidence is admitted, then the fraud will be consummated. *Clarkson vs. Hanway,* 2 *P. Wms.* 203. *Watt vs. Grove,* 2 *Sch. & Lef.* 501. *Jones vs. Slubey,* 5 *Harr. & Johns.* 372. 2 *Com. Dig.* tit. *Bargain & Sale,* (B 10,) 64.

*Taney,* in reply. The deed, under which the appellants claim, purports, on the face of it, to be made for a money consideration only. It appears by the answer and evidence, that no money was in fact paid, and that the deed was in truth made in consideration of marriage only, and that the marriage took effect. If the deed was made without consideration, or was merely voluntary, it is fraudulent and void against the appellees, who were creditors at the time. The consideration mentioned in the deed is admitted not to have been paid. It is, therefore, fraudulent and void, unless some other valuable consideration can be proved. And the question is, can the appellants be permitted to prove the consideration of marriage, upon which, in truth, the deed was made? If by the rules of equity they are permitted to offer such evidence, then the deed is not fraudulent, but is a good deed for a valuable consideration— that is, in consideration of marriage. It is insisted that the evidence is admissible.

1. The general rule is, "that although a particular consideration is mentioned in the deed, yet an averment may be made of another consideration which stands with the consideration expressed, and is not repugnant to it." The rule is stated in the words of Ld. *Coke,* as repeatedly recognized in his reports. *Mildmaye's* case, 1 *Coke,* 176. *Lord Cromwell's* case, 2 *Coke,* 76. *Vernon's* case, 4 *Coke,* 3. *Bedel's* case, 7 *Coke,* 40. In all of these cases, *Villars vs. Beamont,* 2 *Dyer,* 146, is relied on as the leading case, and is recognized as authority. The same rule is recognized in *Sug. Vend.* 97, 98, (ed. 1820,) and in *Phil. Evid.* 425, &c. The rule in *Sugden is,* "that

parol evidence may be given of *collateral and independent* facts, which tend to support the deed," provided it is not offered to vary the agreement, and is consistent with the deed.

2. The case at bar is in all respects within the words and spirit of the rule, as above established. The evidence offered is to prove "a collateral and independent fact, tending to support the deed, and consistent with the deed, and does not vary or control it." It is another consideration consistent with the one expressed in the deed, which, in the language in *Vernon's* case, 4 *Coke*, "*stands with the consideration expressed.*"

3. As the general rule embraces the case, it is incumbent on the appellees, who object to the evidence, to show the principle which excepts it out of the general rule. He who alleges an exception, must prove the exception. It is said, that there is no case in which the additional consideration has been proved, but where the consideration expressed was proved also; and hence it is inferred, that the consideration expressed in the deed must be first proved, in order to let in the proof of the additional consideration. It is perhaps a sufficient answer to this argument to say, that there is no case in which the additional proof was rejected, because the consideration expressed was not proved. The want of a case, therefore, on the subject, cannot be supposed to establish a principle. The argument above stated on the part of the appellees, would prove that the testimony ought to be admitted, quite as well as it proves that it ought to be rejected. The argument of the appellees is briefly this—"There is no case in which the additional consideration was *admitted* where the consideration expressed was not proved; therefore, the additional consideration cannot be *admitted* where the consideration expressed is not proved." Now, try the argument on the other side. There is no case in which the additional consideration was *rejected*, where the consideration expressed was not proved; therefore, the additional consideration cannot be *rejected* where the consideration expressed is not proved. But in truth, the argument on both sides is illogical and unsound. The mere want of a case proves no principle. If the want of a case cannot establish a principle, neither can it narrow or limit a known and admitted principle. And if these positions be right, it follows that the ap-

pellees have failed to show that the case at bar is an exception of the general rule. If they fail to show the exception, the case being within the general rule, the evidence is admissible.

4. It is objected, that when it is proved that the consideration expressed was not paid, that then the deed is fraudulent, according to the proof it becomes void and inoperative, and the party claiming under it will not be permitted to re-establish it by showing another consideration. The answer to this is already given. It is an attempt by the appellees to except this case out of the general rule; to narrow the general rule by incorporating with it the principle above stated. We show the general rule as settled and continually recognized; and we show the authorities on which it rests. If the rule is to be narrowed, or the case at bar to be excepted out of it, the appellees' counsel must show the exception. He must produce the authority which establishes the new principle he seeks to engraft on the rule. He has failed to do so. He cannot, therefore, entitle himself to the exception or limitation for which he contends. Again: The argument on which the appellees' counsel rests the above position, is not sound—it proves too much. The principle, on which the above position rests, is this: that where a party impeaching a deed, shows by proof de hors the deed, that it is fraudulent, and therefore void, the party claiming under the deed thus nullified, shall not be permitted to offer evidence de hors the deed, to re-establish and give life to the deed. If this position were true, then the following case were within it. Property worth $20,000 is conveyed, and the consideration expressed is $5. A creditor of the grantor seeks to vacate the deed. He proves that he was a creditor at the time to the amount of $10,000; that the property conveyed was worth $20,000. Upon this proof alone it is clear that the deed is fraudulent. It is nullified by evidence de hors the deed. May not the party claiming under the deed prove that he actually paid $20,000? All of the cases admit he may do so; yet this is evidence de hors the deed, and is offered to re-establish and give life to it; or to speak more correctly, it is offered to show that the deed was always good, was never null and void. It may be said in the case supposed, the consideration expressed in the deed was actually paid—in the case at bar

it was not.   This is a difference in fact, it is true; but a differ-
ence in fact is not necessarily a difference in principle.   The
principle upon which the deed is made void in both cases is,
that the deed is a fraud on the creditor.   It matters not by
what peculiar chain of facts it is shown to be a fraud upon the
creditor.   It is the fraud, however, proved, that makes it void;
and if it is not fraudulent, whatever may be the facts, it is good,
if in other respects regularly executed.   Neither does the admis-
sibility of the evidence depend on the payment or nonpay-
ment of the consideration expressed.   If the evidence is re-
pugnant to the deed, it is not admitted.   If it is not repugnant
it is admitted.   Whether it is repugnant or not, must depend
on the words contained in the deed itself, or the writing itself,
and not on matter *de hors* the deed; not on matter appearing
by parol out of the deed.   Its repugnancy, therefore, does not
depend on the question, whether the consideration expressed
was or was not paid, but on the question whether the parol evi-
dence is consistent with the writing?   In the case at bar the
testimony is surely quite as consistent with the deed, as in the
case above supposed, and if admissible in the one case is equal-
ly admissible in the other.   Indeed, the only and true question
is, how far parol evidence is admissible where there is an in-
strument of writing?   It is discussed and decided on this prin-
ciple in the case of *Villers vs. Beamont,* 2 *Dyer,* 146, and in
the cases in *Coke's Reports* already cited; and it is classed un-
der this head in *Sugden* and *Phillips* in the passages already
referred to.   It must, therefore, depend not on the payment of
the consideration expressed, but on the words of the deed, that
is, on what consideration is expressed in the deed; and so in-
deed it is decided in so many words in *Lord Cromwel's* case,
2 *Coke,* 76.   "The consideration must stand with the conside-
ration *expressed,*" that is, the consideration named in the deed;
and no question is made about whether it has been paid or not.
And in *Mildmaye's* case, 1 *Coke,* 176, it is decided, that the
consideration of marriage is consistent with a money conside-
ration; and the other cases cited affirm the same doctrine.

    5.  This argument is upon the admission that there is no case
decided where the consideration expressed was not paid.   If
we are right in the principles before urged, the absence of such

a case furnishes no argument against us. But the appellees' counsel, in assuming that fact, is not strictly correct. In *Reade vs. Livingston*, 3 *Johns. Ch. Rep.* 481, the consideration expressed in the deed was money only; and the consideration set up was marriage, it being admitted that no money was paid. It is true, that the point now under consideration does not appear to have been raised in the argument, nor was it directly decided by this court, yet the case necessarily presented the very point now under discussion; and as that case was fully argued, and is most ably decided by Chancellor *Kent*, upon great consideration, it cannot be supposed that the eminent counsel, and distinguished chancellor, would entirely overlook a point which met them at the very threshold of the discussion, and which, if the evidence be not admissible, decided the case at once, and relieved it from the many interesting and difficult questions which appear to have been so elaborately considered, and so well decided by the chancellor. The whole argument of Chancellor *Kent* proceeds on the assumption that the evidence is admissible. It may be inferred from this that it was considered a settled point, and no doubts entertained about it at the bar, or by the court. If this inference be just, it sanctions, in all respects, the admissibility of the evidence as contended for by the appellants. It is indeed hardly possible to believe, that the point was overlooked or forgotten; for the very same principle was discussed and decided upon by Chancellor *Kent*, in *Hildreth vs. Sands*, 2 *Johns. Ch. Rep.* 35, only about two years before the case of *Reade vs. Livingston*. The chancellor's decision is not on the precise point or the precise facts now under discussion, but it involved the same general principle. It was decided according to all the authorities, and supports the principle as contended for on the part of the appellants. This case brings us to the only exception to the general rule; which exception is recognized in the case of *Hildreth vs. Sands*.

6. It may be admitted, that where a deed purports to be for a *valuable consideration*, it cannot be set up as a *gift* or *voluntary* conveyance. This is the doctrine laid down by Ld. *Hardwicke* in *Bridgman vs. Green*, 2 *Ves.* 627, 628. But even there it is subject to certain limitations, and is not to be taken as universally true between all parties who may seek to

invalidate it.   In *Clarkson vs. Hanway*, 2 *P. Wms.* 203, the principle last stated is decided; and this, which is the oldest case upon the subject, may be considered as furnishing the principle by which the case of *Bridgman vs. Green*, and the subsequent cases, have been governed.   In the case of *Clarkson vs. Hanway*, the deed not only purported to be for a valuable consideration, but was insisted on as such in the answer.   In *Hildreth vs. Sands*, the deed purported on the face of it to be for a valuable consideration, and was also insisted on as such in the answer; and the chancellor's opinion confirms the principle as above stated, with this additional limitation, that it must be *"brought forward,"* that is, *insisted on in the answer* as founded on a valuable consideration.   The case of *Watt vs. Grove*, 2 *Sch. & Lef.* 492, 501, will be found not to impair the principles we have stated.   The result of all of these cases, (and they are believed to be the only ones that bear immediately on this part of the case,) is to make the exception even still more limited in its operation than is admitted at the head of this division of the subject.   The true extent, as proved by the authorities cited, appears to be this—Where the grantor was a weak man, liable to be imposed upon, or from his relative situation was liable to the influence of, or to be imposed upon by, the grantee, in such cases, if the deed appears on the face of it to have been for a full and fair valuable consideration, then the grantee shall not be permitted to set it up as a gift. The cases of *Clarkson vs. Hanway*, *Bridgman vs. Green*, and *Watt vs. Grove*, were all cases of this description, and decided upon principles that are not applicable to any other class of cases.   The case of *Hildreth vs. Sands*, is indeed a case of a different description, and the deed is impeached by a condition, not on the ground of imposition on the grantor, but as a fraud by the grantor upon the creditor.   In that case, however, the defendant had put his defence in his answer, "upon the fact of a fair purchase for an *adequate* price," and it is upon that ground that the chancellor rules the evidence to be inadmissible.   This case, therefore, does not enlarge the exception beyond what is warranted by the *English* authorities.   It is very clear that a defendant cannot be permitted to put his defence on one ground in his answer, and another in his evi-

dence. If this view of the subject be right, the exception would not apply to cases, where the deed, on the face of it, was for a consideration merely nominal, and obviously intended merely to give the deed a legal operation; nor to cases where a creditor claimed to vacate the deed as a fraud upon him, unless the defendant in his answer alleged the consideration in the deed to be the true consideration. But if these views are mistaken ones, yet it seems perfectly clear, that none of the cases, nor even the arguments of the court in pronouncing the judgment, when the whole argument is taken together, carry the exception beyond the limits admitted at the head of this division of the subject. If the cases have carried the exception no further, there is no principle settled in them which requires it to be carried further. For if the danger of perjury is the objection to the testimony, there is precisely the same danger where an inadequate price is mentioned in the deed, and parol evidence admitted to prove that a larger sum was paid; yet it is agreed on all hands that this may be done. And if inconsistency with the words of the deed be the objection, the proof of the consideration of marriage is no more inconsistent with the deed, than the proof of an additional money consideration, where a smaller money consideration is the only one expressed. And when the case of *Watt vs. Grove,* is carefully examined, it will be found, that not only an additional payment of money may be proved by parol, but the payment of money upon a contract different from that recited in the deed, and distinct from that on which the deed purports to have been made. It results, therefore, 1st. That by the general rule the evidence of the consideration of marriage is admissible in the case at bar. 2d. That the exception to the rule, does not embrace it.

The cases of *Watt vs. Grove,* and *Peacock vs. Monk,* remain to be examined, and will be found not to impeach the principle insisted on by us. In *Watt vs. Grove,* the consideration expressed in the deed was money—the additional consideration was also money. The remarks of Lord *Redesdale* must, therefore, be considered as applicable to that class of cases. He speaks of the danger of parol evidence, but does he say the evidence offered was inadmissible? On the contrary, in speak-

ing of the additional consideration alleged, he says, "it should be proved by the most decisive testimony." And he decides against the deed, not because the evidence was inadmissible, but because the testimony was not sufficient to prove the fact. Another important part of this case ought not to be overlooked. The chancellor decides that a contract recited in the deed is falsely stated as the original contract, and that, too, by the grantee, whose interest was to be advanced by the misstatement, and who had himself prepared the instrument. The additional evidence was offered to show, not the truth of the recital, but to show another and a different contract, by which the original one had been afterwards changed to the one recited; yet this evidence he held to be admissible.

If the evidence here stated was admissible, in what respect can the case at bar be supposed to differ in principle? Here the consideration, mentioned in the deed, was not paid, and another valuable consideration is offered to support the deed. The deed was not prepared by Mrs. *Betts* or her agents, and she is not, therefore, responsible for a false recital of the contract. In *Peacock vs. Monk*, 1 *Ves.* 128, the parol evidence was admitted; but there was no consideration expressed in the deed, and the chancellor says, *arguendo*, that where a particular consideration is expressed, it is a negative of any other, unless it is added "for other considerations." It is not often that the opinions of Lord *Hardwicke* can be questioned, and perhaps in this case his words may not be accurately reported. For *his dictum* here is contrary to the judgment of the court in the case of *Villers vs. Beamont*. And the authority of the case of *Villers vs. Beamont*, is sanctioned by the cases in *Coke's Reports*, where it is always referred to as settling the law on this point. *Phillip's Evid.* 426, *(note.)* Indeed, the principle established by the case of *Villers vs. Beamont* has never been shaken by any subsequent judgment, and is not questioned by the chancellor in the case now at bar.

In addition to the cases already cited, the following are also referred to in maintenance of the same principles. *The King vs. Inhabitants of Scammonden*, 3 *T. R.* 474. *The King vs. Inhabitants of Laindon*, 8 *T. R.* 379. *Eppes vs. Randolph*, 2 *Call's Rep.* 125. *Duval vs. Bibb*, 4 *Hen. & Munf.*

113. In *Eppes vs. Randolph*, the consideration expressed in the deed to *David M. Randolph*, was natural love and affection, and for his advancement in life. If there was no other consideration, the deed was voluntary and fraudulent against the creditor. The evidence offered was, that it was in consideration of marriage; and the evidence was held to be admissible. And the case of *Duval vs. Bibb*, refers to and recognizes the decision in *Eppes vs. Randolph*. The authorities before cited and remarked upon, are believed to be the only cases bearing upon the principles now in discussion. The decisions are all consistent with each other. It is insisted that they establish the principles we contend for, and show the evidence of the consideration of marriage to be admissible.

If the deed to Mrs. *Betts* be a fraud upon the bank, the deed to the bank, was equally a fraud upon her. The bank and Mrs. *Betts*, were both innocent purchasers for a fair and valuable consideration. If a nominal and inadequate or false money consideration had been stated in the deed to the bank, it is clear that they might have shown the true consideration in money. It would be a severe rule *of equity*, if Mrs. *Betts* who is equally innocent—equally a purchaser—should yet be precluded from the like privilege, when it involves on his part no more danger of perjury, and is no more inconsistent with the deed, than it would have been in the case before supposed, on the part of the bank. The authorities do not lead to such a conclusion, nor do they support such a rule, and it is hoped that it will not now be established in this court.

The act of 1766, *ch.* 14, *s.* 5, by a true construction, means the date of the deed as therein expressed. This is evident from other parts of that act. 2 *Com. Dig.* 64. The act then fixes the date of the deed, and as the prior title was in Mrs. *Betts*, it is of no consequence when the deed was delivered. The question is, whether the appellees have a superior equitable title, Mrs. *Betts* having the prior legal title? The deed to her must be taken to be a true deed.

*Curia adv. vult.*

STEPHEN, J. at the present term, delivered the opinion of the Court. In deciding the question which arises in this case,

no little difficulty has been felt, from the contrariety of opinions which have been expressed by judges of the greatest eminence and distinction, in cases very analogous, if not exactly similar to the present; and the importance of the principle now to be established as a rule of evidence, merits the most full and deliberate consideration. The question then presented to this court for their adjudication, is simply this. Can marriage be given in evidence as the consideration of a deed of bargain and sale, which is expressed to be made for a money consideration only? The facts of the case are as follows: *Enoch Betts* being considerably indebted to the *Union Bank of Maryland*, and being about to be married to *Elizabeth Ball*, on the 17th of March 1819, executed a deed, by which he conveyed to her, and her heirs, a lot or parcel of ground in the city of *Baltimore*, for the consideration mentioned in said deed, of $4000. On the twenty-fourth day of the same month, and the same year, for the purpose of securing the payment of $1700 to the *Union Bank of Maryland*, he executed to the said bank a deed of the same lot or parcel of ground, in trust, to sell the same for the payment of said debt, upon the terms and conditions therein specified. On the 25th of September 1820, *The President and Directors of the Union Bank of Maryland* filed their bill in the court of chancery, for the purpose of vacating and annulling the above mentioned deed to *Elizabeth Ball*, upon the ground that they had no knowledge of its existence, at the time the aforesaid deed was made to them. It is admitted that the consideration of $4000, specified in said deed, never was paid; but it is contended that the deed of conveyance may be supported, by proving that the consideration in truth was marriage, and that such proof is legally admissible. It is not deemed necessary to enter into a more full detail of the facts and circumstances belonging to this case; because if the proof that marriage was the real consideration, is excluded by the rules of evidence upon the subject, the chancellor's decree, ordering a sale of the property for the benefit of the bank, under the deed of the 24th of March 1819, and annulling that of the 17th of March of the same year, to *Elizabeth Ball*, now *Elizabeth Betts*, ought to be affirmed. As has already been remarked, the authorities upon this part of the law of evi-

dence are contrariant, and cannot be reconciled. There is, however, one great and leading principle in the law of evidence relative to this subject, in the affirmance of which they all concur. It is this, that no evidence is admissible which contradicts the deed. In *Maigley vs. Hauer*, 7 *Johns. Rep.* 341, where it was attempted to prove by parol evidence an additional consideration to the one expressed in the deed, the court say, "it is a settled rule, that where the consideration is expressly stated in a deed, and it is not said also, and for other considerations, you cannot enter into proof of any other, for that would be contrary to the deed. This was so decided by this court in *Schermerhorn vs. Vanderdeyden*, 1 *Johns. Rep.* 139, and again in *Howes vs. Barker*, 3 *Johns. Rep.* 506. The same rule prevails in equity, according to the cases of *Clarkson vs. Hanway*, 2 *P. Wms.* 203, and of *Peacock vs. Monk*, 1 *Ves.* 127; and the remedy for the party, if the deed be contrary to the truth of the case, is by seeking relief in equity against the deed, on the ground of fraud or mistake, as was intimated in the case of *Howes vs. Barker*, and as was adopted in the case of *Filmer vs. Gott*, 7 *Bro. Parl. Cas.* 70." In the case of *Peacock vs. Monk*, 1 *Ves.* 128, a bill was filed, claiming the benefit of a trust under a deed, and the point was, whether the plaintiff could prove a valuable consideration, as no consideration was expressed in the deed. Lord *Hardwicke* held, that the proof ought to be read. "It differed, he said, from the common case, upon which the objection is founded, for to be sure, where any consideration is mentioned, as of love and affection only, if it is not said also, for other considerations, you cannot enter into proof of any other; the reason is because it would be *contrary* to the deed, for when the deed says it is in consideration of such a particular thing, that imports the whole consideration, and is negative to any other. But this is a middle case, there being no consideration at all in the deed." Thus it appears that the supreme court of *New-York* have adopted the principle established by Lord *Hardwicke*, and excluded the proof of any other consideration, where one is expressed in the deed, and it is not said for other considerations, on the ground that the admission of such proof would be *contrary* to the deed. This doctrine is certainly not reconcileable to the decision made

in *Villers and Beamont*, 2 *Dyer*, 146. In that case the consideration in a deed of bargain and sale of lands was stated to be a sum of money, but it was averred, and found by the jury, that the indenture was made "as well in consideration of marriage, (to make it a jointure and bar dower,) as of the said sum of money;" and it was adjudged, that although there was a particular consideration mentioned in the deed, yet an averment might be made of another consideration, which stood with the indenture, and which was not contrary to it. Which decision has since been sanctioned by Lord *Coke.* Thus it appears that both these conflicting decisions concur in the principle, as indisputable law, that no averment of any consideration out of the deed can be made when it would tend to contradict the deed. 1 *Phillip's Evidence,* 425, 426.

It is not intended by this adjudication to recognize and adopt the rule of evidence as laid down by either of those high authorities, but simply to decide the question involved in this case upon the peculiar facts and circumstances which belong to it, It is admitted that the consideration mentioned in the deed now before the court, was merely nominal, and never was in fact paid. Can the party then, claiming under it, be permitted to prove that the consideration expressed in the deed was not the true consideration, but that the consideration was marriage? Upon a careful examination of the authorities relative to this subject, it appears that the greatest extent to which they have gone, has been to allow an additional consideration to be proved, which is not repugnant to the one mentioned in the deed. But where a deed is impeached for fraud, the party to whom the fraud is imputed will not be permitted to prove any other consideration in support of the instrument. 1 *Phillip's Evid.* 426. The case of *Clarkson vs. Hanway*, 2 *P. Wms.* 203, is to the same effect. In that case the Master of the Rolls says, "judging upon the face of a deed is judging upon evidence which cannot err; whereas the testimony of witnesses may be false." It is the consideration expressed in the deed impeached as fraudulent, which excludes the proof of any other consideration in support of it, and not the circumstance that the party charged with the fraud has relied upon such consideration in his answer, although such reliance might render the proof

still more objectionable, because he had thereby put his defence upon the same ground. But in this case the proof that marriage was the real consideration, and not money, as mentioned in the deed, was inadmissible, as being contradictory to the language of the instrument, and not an averment of another consideration, not inconsistent with, but additional to the one expressed. In 1 *Phill. Evid.* 426, it is said, that the rule which the authorities appear to have established is, "that although a consideration is expressed, some other *additional* consideration may be shown not inconsistent with the former." The consideration then, which was offered to be proved in this case, (though a valuable one,) not being in addition to the one expressed, but as a substitute for it, was repugnant to the averment of the deed, and upon the admitted principle, was inadmissible *as being contrary to it.*

To give the rule a greater latitude would, it is conceived, be repugnant to the general principles and policy of the law in relation to titles to real property, the evidences and muniments of which are required to be in writing, and enrolled for public inspection and information in cases of contracts made relative thereto.

The objection, that the deed to Mrs. *Betts* only took effect from the time of its delivery, cannot be sustained. As a general principle of the law, there is no doubt that delivery is essential to the legal existence and validity of a deed; but our legislative enactment puts that part of the controversy at rest, by declaring the deed to be efficient and operative from the time of its date.

It has been doubted whether the deed could be supported, even if proof that marriage was the consideration could be received. That ante-nuptial settlements, made in consideration of marriage, are good even though the party be then indebted —See *Reade vs. Livingston,* 3 *Johns. Ch. Rep.* 494, and the cases there cited; but as the evidence, that marriage and not money, was the true consideration of the deed in this case, is not admissible, it follows that the decree of the chancellor must be affirmed.

MARTIN, J. *dissented.*

DECREE AFFIRMED.